The United States Express Co. v. Daniel R. Anthony.

*Error from Leavenworth County.*

1. Evidence: Opinion of Witnesses.—When it is competent for a party to prove that an express company held itself out as a common carrier and common collecting agent between certain points, it is not competent for the witness, by whom it is desired to prove it, to simply give his *opinion;* but he must state the *facts* upon which that opinion is founded, and leave it to the jury to determine from these facts whether the company so held itself out. This opinion is not competent evidence.

2. Id: Admission of Agent.—It is not competent to prove the statements of an agent which the agent had no authority to make, which did not come within the scope of his agency, which were made about a transaction long after the same occurred, and with which he had no connection.

This action was brought by defendant in error against the plaintiff in error, to recover the amount of a draft alleged to have been sent by him, through the agencies of the plaintiff in error for collection against an individual in Hartford, Conn. The company allege that they gave a receipt for the package containing the following provisions:

"We undertake to forward to the nearest point of destination reached by this company only, perils of navigation excepted. And it is hereby expressly agreed that said United States Express Company are not to be held liable for any loss or damage, except as forwarders only; nor for any loss or damage of any box, package or thing, for over $50, unless the just and true value thereof is herein stated; nor for any loss or damage by fire; the acts of God, or of Indians, or of the enemies of the government, the restraint of governments, mobs, riots, insurrections, or pirates; or from any of the dangers incident to a time of war; nor upon any property, or thing, unless properly packed and secured for transportation; nor upon fragile fabrics, unless so marked upon the package containing the same; nor upon any fabrics consisting of or contained in glass."

Other facts in the case appear in the opinion of the court.

*Clough & Wheat*, for plaintiff in error.

*James McCahon*, for defendant in error.

*For plaintiff in error, Clough & Wheat* maintained:

1. Anthony testified in substance that plaintiff in error (at some time, as we understand him, uncertain when) held itself out as in the business of the carrying of goods and collecting of bills at Hartford and elsewhere.

That was not competent or material, and therefore the court erred in admitting the testimony; such evidence was calculated to mislead the jury, because there was no issue on the question of how it held itself out.

2. The statements of Anthony as to what or how the plaintiff in error, or any of its agents, held itself or themselves out, were but an expression of his opinion on that subject, not competent to be considered in determining the question whether plaintiff in error reached Hartford, or transported matter there or not, and was therefore incompetent. 8 *Bosw.*, 416; 31 *Mo.*, 458-9; 43 *Ill.*, 303.

3. The court erred in leaving to the determination of the jury the question whether or not plaintiff in error was in the business of carrying, etc., between Leavenworth and Hartford, because there is not evidence sufficient to support a finding to the effect that the United States Express Company reached Hartford, or any other place nearer there than New York. 3 *Kas.*, 257, 499; 1 *id.*, 303; 4 *id.*, 206; 97 *Mass.*, 478; 7 *Ga.*, 496; 12 *Barb.*, 84; 10 *id.*, 321; 41 *Miss.*, 339; 8 *Ga.*, 114; 1 *Wallace*, 637.

4. And inasmuch as Anthony did not say that they (who he meant by " they " in this connection requires some guessing—see his testimony about holding out, etc.,) held themselves out as carrying to Hartford, etc., at the time when the draft and package were delivered, we think evidence of such holding out not only immaterial, but that the testimony is insufficient to give any practical *prima facie* effect thereto, any uncertainty or indefiniteness as to the time when, or circumstances of such " holding out " being fatal to Anthony's claim based thereon. 25 *Penn. St.*, 449; 22 *Iowa*, 367.

5. And this oral evidence, if sought to be used for

the purpose of showing that plaintiff in error contracted to transport to Hartford, and there collect, etc., notwithstanding the written agreement, is objectionable and incompetent, [4 *Kas.*, 160,] because in conflict with the writing, which was a contract to forward to the nearest point, etc.

6. Anthony accepted the written contract, and the company complied with such contract. But whether it did or not, Anthony in disregard of such contract sues upon an entirely different one, and attempts to either make it good, or recover by showing how the plaintiff in error, in his opinion, held itself out, etc. If the opinion of parties litigant, of the acts of their opponents are admissible to determine their rights, or, as sought to be used in this case to, in effect, change the terms of a written contract, then evidence as to what parties said, or did, or in other words, proof of facts, might as well, we submit, be entirely dispensed with.

7. The court erred in overruling the objection of plaintiff in error to the following question asked Anthony in his own behalf, to-wit: "What did he (Schermerhorn) say about the liability of the company, if anything?" 12 *E. C. L. R.*, 320; 2 *Pick.*, 223; 8 *Wend.*, 480; 6 *Engl.*, [11 *Ark.*,] 23; 1 *Metc.*, [*Ky.*, 232;] 11 *Mo.*, 3; *Hardin*, 282–289; *Littell's Select Cases*, 22; 5 *Gilm.*, 231; 2 *N. Y.*, 19.

*McCahon, for defendant in error*, submitted:

1. A common carrier is one who holds himself out as ready to transport goods, etc., from place to place, for hire, as a business. *Story on Bail.*, § 495; 1 *Snead*, [*Tenn.*,] 220.

2. Holding oneself out as ready to undertake a particular trust for all who may desire his services, consti-

tutes that person a common agent in respect to that particular business. An express company is a common carrier. 36 *Ga.*, 636; 2 *Kelly*, 349; 3 *Kas.*, 205; 2 *Hilt.*, 19; 5 *Duer*, 43; 19 *Barb.*, 346.

3. And when it holds itself out to collect bills, etc., for all who may require its services, it becomes a common collecting agent, and liable for the same degree of negligence as a common carrier. 21 *Ind.*, 4.

4. A clause in a receipt in reference to forwarding goods does not apply to collections. A common carrier, or other common agent, can only limit his common law liability by express contract. 3 *Kas.*, 205; 1 *Oregon*, 409; 25 *N. Y.*, 442; 51 *Barb.*, 69.

5. A receipt containing limitations of liability is not evidence of an express contract. 36 *Ga.*, 635; 1 *Oregon*, 409; 51 *Barb.*, 69.

The amount of damages assessed against the defendant below being only one cent, probably the strongest authority that can be cited for the affirmance of the judgment is the maxim, " *de minimis non curat lex.*"

*By the Court*, VALENTINE, J.

Whether the maxim, *de minimis non curat lex*, has become entirely obsolete in Kansas, or whether it has any practical application in this case, is a question that springs up in the mind involuntarily and unsought at the very threshold of this investigation.

The amount in controversy is hardly of sufficient magnitude to warrant the expenditure of so much time, labor and money, as must necessarily be expended in a prolonged and possibly, acrimonious litigation as this probably has been and is likely to be. The pecuniary

loss of the defendant in error, plaintiff below, is one cent, (so the jury find, though Anthony sued for $72.06,) and he hastens into the halls of justice to vindicate his injured rights and have his pecuniary loss restored.  He obtains a judgment in the district court for that amount; and then in turn the express company, with equal vigor,— furious and indignant,—believing that the judgment against them for one cent is excessive, appeal to this tribunal for a correction of the supposed errors of the district court, and ask to have the judgment against them reversed.

It almost seems like trifling with public justice to allow a case of this kind,—so diminutive in the amount involved and of so little intrinsic merits,—to be prosecuted by either party in any court of justice.  But we have, however, read carefully the whole of the nineteen pages of the petition in error, and the whole of the eighty-two pages of the transcript of the record below, and have examined carefully the lengthy briefs of counsel, and a great many of the numerous authorities therein referred to, and we are satisfied that a great many of the forty-nine different assignments of error, and the thirty-six different exceptions taken to the rulings of the court below, need but very little if any consideration from this court, and particularly so in a one cent case, as this is. With perhaps two or three exceptions, the plaintiff in error has but little room to complain of the rulings of the court below.  They were generally correct.  And while a few of them may seem to be a little too favorable to the defendant in error, there are as many others that are equally favorable to the plaintiff in error.  But none of them, with the said two or three exceptions, are of sufficient magnitude to warrant a reversal of a one cent judgment, or perhaps of any judgment.

It would, therefore, be folly in us, as we think, to take notice in detail of all the questions that are raised, or attempted to be raised, by the plaintiff's petition in error. We will, therefore, confine ourselves in this opinion to those rulings only, of the court below, which we think are sufficient to reverse the judgment.

During the progress of the trial in the court below, two important questions arose, and these were about the only important questions in the case: *First*, Did Anthony employ the express company to carry a certain package to *Hartford*, Connecticut, or did he employ them to carry it only to the nearest point to Hartford, (which was New York city,) to which this company carried packages? *Second*, And did he employ them as a collecting agent, to *collect* a certain draft on the Putnam fire insurance company, at Hartford, or did he employ them only as a *carrier* of the draft?

EVIDENCE:
Opinion of
Witnesses.

It was necessary, at the trial in the court below, for the plaintiff to prove that the express company agreed to carry the package to *Hartford*, and to *collect* the draft, and for this purpose the plaintiff was himself examined as a witness, and among other things he testified as follows, his counsel asking the questions and he answering them:

*Question.* "What sort of business do they (the express company) hold themselves out as transacting?"

*Answer.* "They hold themselves out to deliver packages, and property, and *make collections*."

*Question.* "Where?"

*Answer.* "At various points and *Hartford*."

*Question.* "What sort of business do they hold themselves out as transacting?"

*Answer.* "The carrying of goods and the *collecting of bills*."

*Question.*     " Where from and where to ?"

*Answer.*     " At this point and hundreds of other points in the United States, *Hartford* among the rest."

This evidence was duly excepted to by the defendant at the time.

The plaintiff claims that this evidence was introduced solely for the purpose of proving that the defendants were common carriers, but as that does not seem to be one of the disputed questions in the case, a jury would naturally think it was introduced for some other purpose. The company admit that they are common carriers, though not to Hartford, Connecticut; and admit that whatever they undertook to do for the plaintiff, they undertook as common carriers.

But we will assume that the plaintiff had the right to prove that the company held itself out as a common carrier between the cities of Leavenworth and Hartford, and also to prove that the company *held itself out* as a common collecting agent between said cities; and then the question arises whether they had the right to prove said facts in the manner that they attempted to prove them, that is: by simply proving the *opinion* of the plaintiff, and not by proving the *facts* upon which these opinions were founded.

If these opinions were founded upon something within the personal knowledge of the witness, such as conversations with the company, or such as cards, circulars, or advertisements, known by him to have been issued or authorized by the company, he could have testified as to such conversations, and after laying the proper foundation, he could have introduced said cards, circulars, or advertisements in evidence; but if his opinions were founded upon what third parties had told him, (mere heresay testimony,) he could not testify at all as to

anything connected with the matter, and in no case could he state his mere *opinion* how the company held themselves out. It is the province of the jury to determine that matter, and not the province of the witness.

The court below also erred in permitting said plaintiff to testify concerning certain statements made by one Schermerhorn.

ID: ADMISSIONS of an agent of a company.

Schermerhorn was an agent of the company, but there is no evidence showing that the statements made by him came within the scope of his agency. They were made about a transaction long after the same occurred, and with which Schermerhorn had no connection; and there is no evidence tending to show that Schermerhorn had any authority from the company to make such statement; hence, his said statements were not binding upon the company, and could not be evidence against them.

We are, therefore, under the necessity of reversing the judgment of the court below, and of remanding the case back for a new trial, and for further proceedings.

All the justices concurring.