## SPILLERS v. MISSOURI, K. & O. COACH LINES, Inc.

No. 28415.   Jan. 24, 1939.

Rehearing Denied March 28, 1939.

Chas. L. Yancey and Kavanaugh Bush, for plaintiff in error.

Hudson & Hudson, for defendant in error.

DAVISON, J.  The plaintiff in error commenced this action against the defendant in error to recover $50,000 in damages for personal injuries, medical expense, and loss of time alleged to have been the result of an accident that occurred when the car in which he was riding collided with one of the latter's buses.

The amount of medical expense alleged was $427.87, and the jury allowed him this item, but their verdict was for only $500 in addition thereto.

Both parties will hereinafter be designated as they appeared in the trial court.

The plaintiff here complains of the trial court's failure to grant him a new trial on the theory that the judgment and verdict were contrary to law. To support this contention, he claims that the verdict does not conform to the evidence in that no adequate or proper allowance is therein provided to compensate him for his actual loss of time as established by the evidence, and that the jury must have been misled in assessing his damages by certain evidence that the defendant was allowed to introduce over his objection. The alleged error complained of occurred after it was established that by reason of his injuries in the accident, the plaintiff lost more than two months from his work, which consisted in the practice of law as a member of a law firm in Tulsa, Okla. June 17, 1935, is the date of the accident, and to establish the value of his time the plaintiff showed that his proportionate share as a partner in the net income of the firm for the years 1932, 1933, and 1934 amounted to $31,070.03, $25,143.45, and $33,594.41, respectively. He testified that upon the basis of these figures, his average daily income was $85 per day. Then, upon cross-examination by opposing counsel, the plaintiff, over the objection of his own counsel, was engaged in the following colloquy:

"Q. Mr. Spillers, you testified this morning that this income you received, you testified it averaged about $85 a day, as I understand it?   A. That is true.   Q. Now, Mr. Spillers, that is for the years 1933—'32, '33 and '34?  A. Yes, sir, up to the time of this injury. Q. Have you kept any record of how much it was since the injury? * * * A. I have. * * * Q. Will you tell us, please sir, what your income was in the year 1935? * * * A. January, 1935, was $2,660.25, February—* * * A. $2,660.25, and February was $2,271; in March, $2,127.40; April, $2,793.62; in May, $2,784.50; from June 17, 1935, $1,418.50, making a total from June—from January 1st to June 17th, 1935, $14,065.27, total income for that year was $22,924.96."

The evidence contained in the above quotation that is alleged to be inadmissible is the testimony elicited by the last question, whereby the plaintiff revealed that he derived an income of more than $8,000 from his interest in the law firm during that part of the year 1935 subsequent to the date of the accident.

In support of his contention that the evidence in question is inadmissible, we are cited authorities to the effect that in a personal injury case the plaintiff's income from collateral sources, such as accident or disability insurance and payments from his employer during the period of his incapacity, does not reduce or diminish the damages recoverable against the defendant, and evidence of such income is inadmissible.

Whether the above rule is applicable to the present case will be sufficiently dealt with in the course of our discussion on the primary question of whether the particular error assigned constitutes ground for reversal. It is elementary that the verdict of a jury will not be set aside for error in the

admission of evidence unless it appears that said error was prejudicial to the complaining party. The defendant asserts, in substance, that if the trial court erred in admitting the evidence in question, the error was harmless; that it was cured by the withdrawal of that evidence from the jury's consideration by the following portion of the trial court's instruction No. 13:

"The court further instructs the jury that there has been testimony introduced in this case which shows that the plaintiff during the time he claims to have lost as a direct and proximate result of the injuries in this case complained of, received money from his law partnership engaged in the practice of law, and in this connection you are instructed, that if you find for the plaintiff, in fixing the amount of the plaintiff's recovery, you shall not deduct from that amount any money received by the plaintiff from his partnership connection in the law practice during the time he lost time, if any, as a direct and proximate result of the injuries herein complained of."

As a general rule, error committed in allowing the introduction of inadmissible evidence is cured by the court withdrawing the same and instructing the jury not to consider it, but where such evidence "bears upon the vital issues in the case, and is so impressive that in the opinion of the appellate court its effect is not removed from the minds of the jury by its subsequent withdrawal, or by the court's instructions to disregard it, the judgment will be reversed on account of its erroneous admission, and a new trial will be granted, as this constitutes the exception to the general rule." Anglo-Texas Oil Co. v. Manatt, 125 Okla. 92, 94, 256 P. 740, 741.

The plaintiff asserts that the jury's assessment of only $500 in damages (other than medical expense) is erroneous because it is clearly contrary to the court's instruction (above quoted), and is also contrary to the evidence, which he contends established that his time was worth $85 per day. This argument is based upon assumption and a misconception of the law. The plaintiff's statement that he proved his time to be worth $85 a day is based upon the premise that evidence of the amount of his income from the firm constitutes proof of the value of his lost time. The authorities do not substantiate this premise. Such evidence in an action for lost earnings or lost time (as distinguished from lost profits) has only probative force and is not conclusive proof of the loss. The true measure of damages for the loss of a person's earnings or the value of his time as a partner in an established commercial or professional enterprise is the value of his services in that business. See

Hoffman v. Lane (Cal. App.) 54 P.2d 477; Piche v. Halvorson (Minn.) 272 N. W. 591; Turner v. Great Northern R. Co., 15 Wash. 213, 46 P. 243, 246, 247; Fishang v. Eyermann Contracting Co. (Mo.) 63 S. W.2d 30; 14 B. U. L. Rev. 809. See, also, 17 Marq. L. Rev. 3, 10.

The plaintiff's argument to the effect that the jury's verdict as to the amount of his loss could have been arrived at only by deducting from the value of his lost time the amount of his income from the firm during that period of time (contrary to the rule with respect to income from collateral sources and the court's instruction No. 13) is also lacking in factual foundation. It must be regarded merely as speculation based upon an assumption of a fact, and that assumption is that the evidence objected to disclosed that his firm paid him for the period of his incapacity. We do not concur with the plaintiff in his interpretation of that evidence, and consequently cannot attribute to it the wrongful effect which might result from such an interpretation. It is true that the answer he gave to the opposing counsel's inquiry concerning his income from his firm (as hereinbefore noted) reveals that he received from that source an income of more than $8,000 during some period of the year 1935 subsequent to June 17th, the date of the injury, but does that revelation necessarily leave the impression that any part of that sum was compensation for the ten or twelve weeks immediately following June 17th, which was the period of his incapacity? In our opinion this question can only be answered in the negative unless resort be made to the realm of inference. And if we resort to inference, might it not as reasonably be inferred that his firm did not pay him for the period of his incapacity as to infer that it did, since his answer reveals that his income from that source was much more than $8,000 for that part of 1935 previous to the accident? Since the plaintiff's testimony shows that his previous income had fluctuated from month to month, and he did not reveal what part, if any, of the $8,000 was his proportionate share of the firm's income for the months during which he was unable to attend to his professional duties, what sum would the jury have deducted from the value of his lost time, if they had wished to reduce their assessment of his damages by the amount of his income during the period of his incapacity, in disobedience to the court's admonition?

We believe that the mere formulation of the above questions is sufficient to demonstrate that the impression attributed to the evidence complained of is the result of mere speculation rather than logical reasoning.

We cannot say that this evidence impressed the jury with the fact that the plaintiff had been compensated during the period of his incapacity when said evidence does not establish that fact.

In view of the foregoing considerations, we hold that the present case does not come within the exception to the general rule stated in Anglo-Texas Oil Co. v. Manatt, supra, and, therefore, that the error, if any, that the trial court may have committed in requiring the plaintiff to reveal the amount of his income subsequent to the date of the injury was cured by the trial court's admonition in instruction No. 13.

The judgment of the district court is hereby affirmed.

BAYLESS, C. J., and OSBORN, CORN, GIBSON, and DANNER, JJ., concur. WELCH, V. C. J., and RILEY and HURST, JJ., absent.